692 F.2d 536
 111 L.R.R.M. (BNA) 3031, 95 Lab.Cas. P 13,859
 The LACKAWANNA LEATHER COMPANY, Appellant/Cross-Appellee,
v.
UNITED FOOD & COMMERCIAL WORKERS INTERNATIONAL UNION,
AFL-CIO & CLC, DISTRICT UNION NO. 271, formerly Amalgamated
Meatcutters & Butcher Workmen of North America, AFL-CIO
(Local 271), Appellee/Cross-Appellant.
 Nos. 81-2434, 82-1052.
 United States Court of Appeals,
Eighth Circuit.
 Submitted June 17, 1982.
Decided Nov. 10, 1982.
 
 Robert L. Berry (argued), Kennedy, Holland, DeLacy & Svoboda, Omaha, Neb., for appellant and cross-appellee.
 Thomas F. Dowd (argued), Dowd & Fahey Law Offices, Omaha, Neb., for appellee and cross-appellant.
 Before BRIGHT, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 The Lackawanna Leather Company (Lackawanna) appeals from a district court judgment which enforces an arbitration award in favor of the United Food and Commercial Workers International Union, AFL-CIO and CLC, District Union No. 271 (the Union). Lackawanna's principal contention on appeal is that the issue of the proper interpretation of section 8.4 of the collective bargaining agreement (CBA) was never submitted to the arbitrator, that the arbitrator exceeded his authority in deciding this issue, and that therefore the portion of the award dealing with section 8.4 should be vacated. The Union cross-appeals from the district court's refusal to grant its application for attorney fees and claims that Lackawanna acted without justification in refusing to comply with the enforcement of the arbitration award. With respect to the issue raised by Lackawanna's appeal, we reverse; in all other respects, we affirm.
 
 
 2
 On March 11, 1980, Charles Hodges, an employee of Lackawanna, received a written notice of poor work performance for improperly operating a hide-shaving machine at the company's plant in Omaha, Nebraska. Upon receiving this notice, Hodges was discharged pursuant to section 8.4 of the CBA. This section provided that:
 
 
 3
 An employee, who during the course of a years [sic] period, receives three written notices in relation to inefficiency, absesenteeism [sic], etc. shall be immediately discharged upon receipt of the third notice....
 
 
 4
 Within the previous twelve months, Hodges had received two other warning notices, one for an unexcused absence and one for excessive tardiness.
 
 
 5
 On March 12, 1980, the Union filed a written grievance on behalf of Hodges. The grievance letter provided in pertinent part:
 
 
 6
 This letter is to be considered an official grievance on behalf of Charles Hodges' warning notice and discharge. It is the position of Mr. Hodges and the Union that the warning notice and his discharge of March 11, 1980 is not for justifiable cause as per the labor agreement.
 
 
 7
 Be further advised that it is Mr. Hodges' and the Union's position that this action is directly connected to the fact that Mr. Hodges refused to take his vacation and elected to draw unemployment during the recent plant shutdown.
 
 
 8
 Therefore, it is the request of Mr. Hodges and this Union that he be reinstated to his position with full back pay and seniority and the warning notice be removed from his file.
 
 
 9
 Grievance proceedings were then initiated, terminating in the submission of the grievance to arbitration on May 12, 1980.
 
 
 10
 At the arbitration hearing, the issue disputed was whether the written notice for poor work issued on March 11, 1980 was factually justified. Neither side apparently raised any issue or presented any evidence on whether Lackawanna could combine written notices for different types of infractions under section 8.4 of the CBA in automatically terminating Hodges. The arbitrator upheld Lackawanna's position in part by ruling that it was justified in issuing the poor work notice. This conclusion is not contested here. What is contested is the arbitrator's further holding that section 8.4 of the CBA required three written notices for the same infraction and that Hodges' dismissal was improper since his three written notices were for different infractions. The arbitrator ordered Hodges to be reinstated but his warning notice for poor work to remain in effect.[1]
 
 
 11
 Pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. Sec. 185(a) (1976),[2] Lackawanna brought this action in the United States District Court for the District of Nebraska alleging that the portion of the arbitration award interpreting section 8.4 of the CBA should be vacated. The Union filed a counterclaim seeking judicial enforcement of the arbitration award. The Union moved for judgment on the pleadings, and both parties moved for summary judgment. The district court denied all the motions. The court, however, expressed its interest in having the record more thoroughly developed as to whether Lackawanna's interpretation of section 8.4 was discussed during the informal grievance proceedings or at the arbitration hearing. The record was thereafter amplified, and new motions for summary judgment were filed. The district court granted the Union's motion for summary judgment, denied Lackawanna's, and ordered Lackawanna to comply in all respects with the arbitrator's award. This appeal followed.
 
 I. The Scope of the Arbitrator's Authority
 
 12
 The principles governing this case are well-established. In reviewing an arbitration award, a court does not reexamine the merits of the parties' claims but gives deference to the arbitrator's decision so long as it "draws its essence" from the collective bargaining agreement. See, e.g., United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596-97, 80 S.Ct. 1358, 1560-61, 4 L.Ed.2d 1424 (1960); United Food & Commercial Workers, Local No. 222 v. Iowa Beef Processors, Inc., 683 F.2d 283, 285 (8th Cir.1982); Vulcan-Hart Corp. (St. Louis Division) v. Stove, Furnace & Allied Appliance Workers International Union Local No. 110, 671 F.2d 1182, 1184 (8th Cir.1982). This deferential stance promotes the federal policy favoring the settlement of labor disputes through arbitration. United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 596, 80 S.Ct. at 1360.
 
 
 13
 Judicial deference to arbitration, however, does not grant carte blanche approval to any decision that an arbitrator might make. Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1, 611 F.2d 580, 583 (5th Cir.1980) (citing International Association of Machinists v. Hayes Corp., 296 F.2d 238, 243 (5th Cir.1961), reh'g denied, 316 F.2d 90 (5th Cir.1963) (per curiam)). An arbitrator can bind the parties only on issues that they have agreed to submit, and whether the arbitrator has exceeded those bounds is a proper issue for judicial determination. International Association of Machinists, District 776 v. Texas Steel Co., 639 F.2d 279, 283 (5th Cir.1981) (citing Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1, supra, 611 F.2d at 583). A court may vacate a labor arbitration award if the arbitrator exceeds the scope of the submission by ruling on issues not presented to him by the parties. See, e.g., Kansas City Luggage & Novelty Workers Union, Local No. 66 v. Neevel Luggage Manufacturing Co., 325 F.2d 992, 994 (8th Cir.1964); Local Union No. 2-477, Oil, Chemical & Atomic Workers, International Union v. Continental Oil Co., 524 F.2d 1048, 1050 (10th Cir.1975), cert. denied, 425 U.S. 936, 96 S.Ct. 1668, 48 L.Ed.2d 177 (1976); Textile Workers Union of America, Local Union No. 1386 v. American Thread Co., 291 F.2d 894, 900-01 (4th Cir.1961); cf. Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649, 651-52 (5th Cir.1979) (commercial arbitration award may be vacated if arbitrator awards on matter not submitted).[3] See generally R. Gorman, Basic Text on Labor Law, Unionization, and Collective Bargaining 588 (1976); D. Nolan, Labor Arbitration Law and Practice in a Nutshell 88-92 (1979); St. Antoine, Judicial Review of Labor Arbitration Awards: A Second Look at Enterprise Wheel and its Progeny, 75 Mich.L.Rev. 1137, 1150-52 (1977).
 
 
 14
 Initially, it should be emphasized that there is no dispute in this appeal as to whether the interpretation of section 8.4 is an arbitrable issue. The basic issue raised is whether the arbitrator exceeded the scope of the submission by construing the meaning of section 8.4 of the CBA and deciding that the three notices for work infractions required by section 8.4 to terminate an employee had to be for the same type of infraction.[4] Upon carefully reviewing the record, we conclude that the interpretation of section 8.4 was not an issue that was "specifically or necessarily included in the subject matter submitted to arbitration," and that the arbitrator, by construing section 8.4, exceeded the scope of the submission. Kansas City Luggage & Novelty Workers Union, Local No. 66 v. Neevel Luggage Manufacturing Co., supra, 325 F.2d at 994; cf. Truck Drivers & Helpers Union Local 784 v. Ulry-Talbert Co., 330 F.2d 562, 566 (8th Cir.1964) (arbitrator exceeds jurisdiction when award goes beyond limitation contained in collective bargaining agreement).
 
 
 15
 The Union makes two primarily factual arguments (which the district court found dispositive) to sustain the arbitrator's authority in this case.
 
 
 16
 First, the Union contends that the inclusion of the phrase "and discharge" in the grievance letter, supra, implicated the interpretation of section 8.4 as an issue at arbitration. We disagree. The quoted phrase is so ambiguous and vague that we cannot say that it put the parties fairly on notice that such an issue was being submitted to arbitration. Cf. Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., supra, 607 F.2d at 651 (parties to commercial arbitration entitled to notice). Adequate notice of the issues is a prerequisite to a fundamentally fair hearing, for without such notice the parties would be effectively denied an opportunity to prepare and present their case at arbitration. We conclude that the grievance letter in this case did not provide the parties with such adequate notice.
 
 
 17
 Moreover, in searching the record we find no evidence that the parties had any understanding to the contrary.[5] Rather, the opposite appears to obtain. Testimony from the deposition of Arbitrator Doyle shows that neither party raised any issue or presented any evidence to the effect that Lackawanna could not combine written notices for different types of infractions under section 8.4 in automatically terminating Hodges. Affidavits submitted by Lackawanna are further confirmation of the same. Finally, in its Memorandum of Law in Support of Defendant's Cross-Motion for Summary Judgment, even the Union concedes that "Section 8.4 was not challenged at the hearing ...." Altogether, this is persuasive evidence that the interpretation of section 8.4 was not within the contemplation of the arbitration submission.
 
 
 18
 Secondly, the Union contends that the arbitrator was required to interpret section 8.4 by virtue of Lackawanna's reliance on that section in terminating Hodges. This argument assumes, however, that the parties understood there to be an issue in the first instance. In light of the evidence considered above to the contrary, the Union's argument must fail. The company's reliance on section 8.4 does not demonstrate the company had notice that the interpretation of section 8.4 was in issue; rather, it tends to show merely that the company was automatically applying to Hodges what had been a long-standing company practice concerning the termination of employees under that section.
 
 
 19
 The Union also urges from United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 599, 80 S.Ct. at 1362, that a court may not substitute its judgment for that of the arbitrator simply because its interpretation of a contract may differ. That portion of Enterprise Wheel is irrelevant to the question presented here. Significantly, in the same case the Supreme Court indicated that an arbitrator is restricted to those "areas marked out for his consideration." Id. at 598, 80 S.Ct. at 1361. In the case at bar we believe the arbitrator has exceeded those boundaries.
 
 
 20
 Accordingly, we hold that the issue of the proper interpretation of section 8.4 of the CBA was not submitted to the arbitrator and that the arbitration award is null and void insofar as it reinstated employee Hodges. We reverse and remand to the district court with instructions to order the arbitration hearing to be re-opened on this issue.
 
 II. The Union's Claim for Attorney Fees
 
 21
 In its cross-appeal, the Union claims that the district court abused its discretion in declining to award attorney fees incurred in seeking enforcement of the arbitration award.
 
 
 22
 In suits to enforce arbitration awards, we note there is no statutory authorization for awarding attorney fees. General Drivers, Local No. 120 v. Sears, Roebuck & Co., 535 F.2d 1072, 1077 (8th Cir.1976). Moreover, we find no exceptional circumstances such as bad faith in bringing this action. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 258-59, 95 S.Ct. 1612, 1616, 1622-23, 44 L.Ed.2d 141 (1975); Richardson v. Communications Workers of America, 530 F.2d 126, 132 (8th Cir.), cert. denied, 429 U.S. 824, 97 S.Ct. 77, 50 L.Ed.2d 86 (1976). Therefore, we do not believe the district court abused its discretion in denying attorney fees to the Union.
 
 
 23
 After carefully reviewing the record, we reverse that portion of the district court's judgment which confirms the arbitrator's interpretation of section 8.4 of the collective bargaining agreement, and remand for further proceedings consistent with this opinion. Otherwise, the judgment is affirmed.
 
 BRIGHT, Circuit Judge, dissenting:
 
 24
 I dissent. In my judgment, the record demonstrates that the arbitration award properly rests on the collective bargaining agreement. The award, therefore, should be enforced. That the parties failed to introduce evidence regarding the interpretation of section 8.4 of the collective bargaining agreement is not a valid ground for vacating the award. Indeed, such a provision and its ordinary interpretation in collective bargaining agreements must be reached in any decision made by an arbitrator.
 
 
 25
 The grievance letter referred to at page 537 of the majority opinion sets forth the Union's contention that Hodges' discharge "is not for justifiable cause as per the labor agreement." (Emphasis added.) Similarly, Lackawanna argues in its brief that its officers testified both in their affidavits and at the hearing that Hodges' discharge was in accordance with company policy and the collective bargaining agreement.
 
 
 26
 At the outset of the case, the arbitrator outlined the issue as follows:
 
 
 27
 Did the company have proper cause to warn and terminate Charles Hodges for poor work on March 7, 1980? If not, what is the proper remedy. [Emphasis added.]
 
 
 28
 In other words, the arbitrator considered each element of the issue separately, asking first whether Hodges' conduct justified a warning notice, and, second, whether a warning notice properly made would justify the discharge.
 
 
 29
 After concluding that Hodges' conduct did indeed warrant a warning notice, the arbitrator considered the employer's right to terminate Hodges. The arbitrator first recognized Lackawanna's position "that a Section 8.4 discharge is automatic upon receipt of a third warning notice for any reason." Next, the arbitrator observed that neither party introduced any evidence regarding the interpretation of section 8.4, and that "[a] Company witness testified that the discharge of Hodges was in accord with Company policy, but no prior instances of the administration of such a policy were introduced."
 
 
 30
 The arbitrator necessarily referred to the usual interpretation of provisions similar to section 8.4 of the collective bargaining agreement. The arbitrator observed that such provisions are common in collective bargaining agreements and implement the notion of progressive discipline. Provisions similar to section 8.4 require multiple notices for specific offenses in order to justify discharge. The arbitrator construed section 8.4 to require three notices of inefficiency to justify discharge. Here, the company gave Hodges only one such notice.
 
 
 31
 Thus, by determining the meaning of section 8.4, the arbitrator addressed the precise issue presented to him in the grievance letter: whether the warning notice and discharge constituted justifiable cause "as per the labor agreement." It is, therefore, clear to me that the arbitrator acted correctly in resolving the issue under the collective bargaining agreement. The question of whether the arbitrator erred in reaching a particular result is irrelevant to the determination of whether the arbitrator acted within his jurisdiction.
 
 
 32
 Lackawanna claims that the arbitrator acted outside his jurisdiction because the "proper interpretation" of the clause in question was never submitted to him. That argument is seriously flawed. Lackawanna's justification for discharge required that it establish a factual and contractual basis for the discharge. Without evidence as to the meaning of the contract clause in question, the arbitrator could properly give that clause a reading ordinary to similar labor contracts. That the arbitrator's reading of the contract does not conform to Lackawanna's is immaterial. Lackawanna has only itself to blame for not informing the arbitrator that the clause in its contract should be read differently than similar clauses in other contracts. To hold otherwise, as the majority does here, relieves the employer of its burden of showing that its actions were justified.
 
 
 33
 The district court aptly summarized its reasons for affirming the arbitrator's award as follows:
 
 
 34
 It is clear that the Union wished the arbitrator to decide whether Mr. Hodges' "warning notice and his discharge of March 11, 1980 is ... for justifiable cause as per the labor agreement. ["] Absent a formal submission of the issue, this grievance letter of March 12, 1980, served to present the issue to the arbitrator. The Court notes that very little, if any, evidence was presented at the arbitration hearing with regard to the past interpretations of section 8.4. However, that is not dispositive. What is dispositive is the fact that the Company relied on section 8.4 to discharge Mr. Hodges, and the grievance submitted to the arbitrator asked whether there was just cause for the warning and discharge. In United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, [363 U.S. 593 [80 S.Ct. 1358, 4 L.Ed.2d 1424] (1960)], an arbitrator's award was challenged as going beyond the scope of the submission. The court held that he had not, noting that "he had stayed within the areas marked out for his consideration." 363 U.S. at 597 [80 S.Ct. at 1361]. In the instant case, Lackawanna may not have agreed with [the arbitrator's] construction of Section 8.4 of the CBA, but it cannot be said that the arbitrator went outside the areas marked for his consideration. "It is the arbitrator's construction which was bargained for, and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." United Steelworkers of America v. Enterprise Wheel & Car Corp., supra, 363 U.S. at 599, 80 S.Ct. at 1362. * * *
 
 
 35
 This Court will not review the reasoning of the arbitrator; it has merely determined that [the arbitrator] reached a rational conclusion based on the terms of the CBA and the grievance submitted to him. * * * Therefore, the defendant Union is entitled to have the arbitrator's decision enforced. [The Lackawanna Leather Co. v. United Food & Commercial Workers Int'l Union, AFL-CIO, & CLC, District Union No. 271, etc., No. 80-0-398, slip op. at 5-7 (D.Neb. Nov. 24, 1981) (footnotes omitted).]
 
 
 36
 I agree with the district court and would affirm. In determining whether an arbitrator has exceeded his authority, the agreement must be broadly construed with all doubts being resolved in favor of the arbitrator's authority. Resilient Floor v. Welco Mfg. Co., 542 F.2d 1029, 1032 (8th Cir.1976). The arbitrator has settled the labor grievance. I strongly disagree with the majority's view that the arbitrator's award should be vacated and the issue resubmitted to arbitration several years after the events in question. Accordingly, I dissent.
 
 
 
 [1]
 The arbitration award also dealt with a poor work notice issued by Lackawanna to employee Martin Janulewicz on March 11, 1980. That portion of the award, however, is not at issue on this appeal
 
 
 [2]
 Section 301(a) provides:
 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.
 Id.
 
 
 [3]
 The Totem court, in vacating a commercial arbitration award, relied on the United States Arbitration Act Secs. 10(c)-10(d), 9 U.S.C. Secs. 10(c)-10(d) (1976). Courts disagree on whether the Arbitration Act applies to appeals from labor arbitration awards or is limited to the review of commercial arbitration awards. Compare Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1127 n. 18 (3d Cir.1969) (Arbitration Act does not govern review of labor arbitration awards) with Western Elec. Co. v. Communications Workers of Am., 450 F.Supp. 876, 881 (E.D.N.Y.) (Arbitration Act narrows judicial power to review labor arbitration awards), aff'd without opinion, 591 F.2d 1333 (2nd Cir.1978). See generally Burstein, The United States Arbitration Act--A Reevaluation, 3 Vill.L.Rev. 125, 134-41 (1958); Judicial Enforcement of Arbitration Awards, [2 Labor Relations] Lab.L.Rep. (CCH) p 3280, at 8376-77 (Feb. 25, 1977); Markham, Judicial Review of an Arbitrator's Award under Section 301(a) of the Labor Management Relations Act, 39 Tenn.L.Rev. 613, 642-44 (1972). We need not reach this issue in this case as it was not raised in the district court or before this court
 
 
 [4]
 In addition to its principal contention, appellant urges other grounds for reversal: (1) Lackawanna had no notice that its application of section 8.4 was being submitted to the arbitrator for decision and therefore appellee should be estopped from claiming otherwise, and (2) the doctrine of equitable estoppel and the "unclean hands" maxim of equity should preclude appellee from claiming the benefits of the arbitrator's award ordering the reinstatement of the grievant with back pay. Since we agree with appellant's principal claim, we need not address these alternative arguments. We note, however, that the notice question is related to appellant's principal contention and is therefore addressed in that context
 
 
 [5]
 In determining the scope of an arbitration submission, courts have considered a number of factors to be relevant: clarity and scope of the submission language; correspondence between the parties; description and discussion of the issues during arbitration; and evidence of confusion, uncertainty, or dissent in the record. See Local Union No. 2-477, Oil, Chem. & Atomic Workers, Int'l Union v. Continental Oil Co., supra, 524 F.2d at 1050; Kroger Co. v. International Bhd. of Teamsters, Local No. 661, 380 F.2d 728, 731-32 (6th Cir.1967); Sweeney v. Morganroth, 451 F.Supp. 367, 369-70 (S.D.N.Y.1978); Delta Lines, Inc. v. Brotherhood of Teamsters, Local 85, 409 F.Supp. 873, 875-76 (N.D.Ca.1976); College Hall Fashions, Inc. v. Philadelphia Joint Bd., Amalgamated Clothing Workers of Am., 408 F.Supp. 722, 729 (E.D.Pa.1976)