**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, LOCAL 14, Appellant,**

v.

**ALDRICH AIR CONDITIONING, INC. and Aero Sheet Metal, Inc., Appellee.**

No. 82–2346.

United States Court of Appeals, Eighth Circuit.

Submitted March 18, 1983.

Decided Sept. 26, 1983.

Banks & Johnson, Gary L. Monserud, Rapid City, S.D., for appellee.

Dennis W. Finch, Finch & Viken, Rapid City, S.D., for appellant.

Before BRIGHT and JOHN R. GIBSON, Circuit Judges, and HANSON,* District Judge.

JOHN R. GIBSON, Circuit Judge.

The issue before us is the enforceability of an interest arbitration clause when the parties cannot agree on the inclusion of a similar clause in the new agreement. An interest arbitration clause is one in which the parties agree to arbitrate disputes over the terms of a new collective bargaining agreement in the event of deadlock. The district court[1] held that the clause was unenforceable on two alternative grounds: (1) there was no duty to arbitrate because the collective bargaining agreements in question had expired, and (2) the interest arbitration clause as applied to this situa-

---

**5.** We note that a recent Seventh Circuit decision, *Boyle v. United States,* 710 F.2d 1251 (7th Cir.1983), may take a different view.

* The Honorable William C. Hanson, Senior United States District Judge for the Northern and

Southern Districts of Iowa, sitting by designation.

**1.** The Honorable Andrew W. Bogue, Chief Judge, United States District Court for the District of South Dakota.

tion was repugnant to national labor policy. We affirm.

On July 28, 1977, Appellees Aldrich Air Conditioning, Inc. and Aero Sheet Metal, Inc. separately entered into collective bargaining agreements with Sheet Metal Workers' International Association, Local 154. The agreements, entitled "Standard Form of Union Agreement," are identical in all material respects. The agreements were to remain in effect until April 30, 1980, and from year to year thereafter unless written notice of reopening was given. In the event of notice of reopening, the agreement would continue in effect until conferences were terminated by either party except as modified by section 8 of Article X. Section 8 of Article X established a procedure for resolving "any controversy or dispute arising out of the failure of the parties to negotiate a renewal of this agreement." If negotiations deadlock, the dispute is submitted to the National Joint Adjustment Board, consisting of representatives from the Sheet Metal Workers' International Association and the Sheet Metal and Air Conditioning Contractors' National Association, Inc. The section also provided that unless otherwise agreed upon or directed, any new agreement awarded after arbitration shall be retroactive to the date immediately following the expiration date of the old agreement.

By letter dated December 20, 1979, Aldrich notified Local 154 that it was terminating its collective bargaining agreement with the local. By letter dated January 24, 1980, Aero likewise notified Local 154 that it was terminating its collective bargaining agreement. Also on that date, Appellant Local 14, the successor bargaining representative to Local 154,[2] sent Aldrich and Aero notice of reopening and of its intent to negotiate. Thereafter, on February 7, 1980, Aldrich sent a letter to Local 14 reasserting

its previous notice of termination. Negotiations, however, were held between Local 14 and the employers on April 9, April 18, April 29, and May 8, 1980. The parties were unable to reach agreement. The primary difference between the parties was the inclusion of an interest arbitration clause in the new collective bargaining agreements. On May 8, 1980, Local 14 declared a deadlock and the next day submitted the disputes over the new terms to the National Joint Adjustment Board pursuant to Article X, Section 8.

The employers then brought suit in the district court to enjoin arbitration. Judge Bogue dismissed the action on the ground that the court lacked subject matter jurisdiction because the collective bargaining agreements expired on April 30, 1980 and the duty to arbitrate under the interest arbitration clause expired along with the agreements.

Notwithstanding the district court's opinion, Local 14 proceeded to arbitration. The employers refused to participate. On June 24, 1980, the National Joint Adjustment Board awarded what has been called the "Minot" contract which did not include an interest arbitration clause. The Board "clarified" its decision on November 5, 1980 by indicating that it was the Board's intention to award collective bargaining agreements which contained an interest arbitration clause as in Article X, Section 8, of the original agreements. Local 14 then brought this action to enforce the awards.

We agree with the district court that the interest arbitration clause is unenforceable under the circumstances of this case. Local 14 bargained to impasse over the issue of whether to include an interest arbitration clause in the new collective bargaining agreements. The parties have not specified and we are unable to discern other disputed issues.[3] The union invoked the arbitration

2. Appellees do not challenge Local 14's authority to enforce its predecessor's rights under the collective bargaining agreements.

3. The case was submitted to the district court on a stipulation of facts. Local 14 concluded that the case involved "little, if any, dispute

over the facts." The record before us, including the stipulation, the exhibits and the briefs do not demonstrate other disputed issues between the parties.

procedure provided under the interest arbitration clause in the expiring agreements in order to have the same clause included in the new agreements. Ignoring the district court order which found no duty to arbitrate, Local 14 proceeded to arbitration without the participation of Aldrich or Aero.

It is well settled that an interest arbitration clause is a nonmandatory subject of bargaining. Therefore, a union's insistence to impasse on inclusion of an interest arbitration clause in a new contract is an unfair labor practice. *Sheet Metal Workers Int'l Assoc. Local 252 v. Standard Sheet Metal, Inc.*, 699 F.2d 481 (9th Cir.1983); *Milwaukee Newspapers & Graphic Communications Union Local No. 23 v. Newspapers, Inc.*, 586 F.2d 19 (7th Cir.1978), cert. denied, 440 U.S. 971, 99 S.Ct. 1534, 59 L.Ed.2d 787 (1979); *NLRB v. Sheet Metal Workers Int'l. Assoc., Local Union No. 38*, 575 F.2d 394 (2d Cir. 1978); *NLRB v. Massachusetts Nurses Assoc.*, 557 F.2d 894 (1st Cir.1977); *NLRB v. Greensboro Printing Pressman and Assistants' Union No. 319*, 549 F.2d 308 (4th Cir. 1977); *NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252*, 543 F.2d 1161 (5th Cir.1976).

Once included in a collective bargaining agreement, however, interest arbitration clauses generally are enforceable. This rule and its basis in the Steelworkers Trilogy is explained in *Chattanooga Mailers Union, Local No. 92 v. Chattanooga News-Free Press Co.*, 524 F.2d 1305 (6th Cir.1975). See also *Nashville Newspaper Pressmen's Union, Local 50 v. Newspaper Printing Corp.*, 518 F.2d 351 (6th Cir.1975); *Winston-Salem Pressmen & Assistants' Union No. 318 v. Piedmont Publishing Co.*, 393 F.2d 221 (4th Cir.1968); *Builders Ass'n. of Kansas City v. Greater Kansas City Laborers District Council*, 326 F.2d 867 (8th Cir.1964), cert. denied, 377 U.S. 917, 84 S.Ct. 1182, 12 L.Ed.2d 186 (1964). We deal here with the limited question of enforceability of an interest arbitration clause to require inclusion of a similar clause in a new agreement. Most of the Courts of Appeals have denied enforceability in this circumstance.

The National Labor Relations Board in *NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252*, 543 F.2d 1161 (5th Cir.1976) petitioned for enforcement of its order directing the union to bargain in good faith. The collective bargaining agreement in question contained an interest arbitration clause. When the union insisted on inclusion of a similar clause in a new agreement, the employer filed an unfair labor practice charge. The Fifth Circuit upheld the NLRB position that an interest arbitration clause is a nonmandatory subject of bargaining and that therefore the union's insistence to impasse constituted a refusal to bargain in good faith. The court further held that the union could not rely on the interest arbitration clause in the existing contract to insist on inclusion of a similar clause in the successor contract, stressing the self-perpetuating nature of such a practice. The court stated the reasoning behind this rule as follows:

> There are several important reasons why a new contract arbitration clause should not be enforceable to perpetuate the inclusion of the clause in successive bargaining agreements. The contract arbitration bargaining system could be self-perpetuating: a party, having agreed to the provision, may find itself locked into that procedure for as long as the bargaining relationship endures .... Parties may justly fear that the tendency of arbitrators would be to continue including the clause, for that is exactly what happened in this case .... The perpetuation of contract arbitration clauses in successive contracts may well serve to increase industrial unrest. Under contract arbitration an outsider imposes contract terms .... In these circumstances, a disappointed party can readily believe that the arbitrator lacked appreciation of its needs .... The likelihood that one party will feel aggrieved by a contract arbitration award increases as parties move from contract to contract.

*NLRB v. Columbus Printing Pressmen & Assistants' Union No. 252*, 543 F.2d 1169–70 (5th Cir.1976).

Other courts have followed *Columbus Printing* in holding that an interest arbitration clause is unenforceable with respect to the inclusion of a similar clause in a new agreement. *NLRB v. Greensboro Printing Pressmen and Assistants' Union No. 319,* 549 F.2d 308 (4th Cir.1977); *Milwaukee Newspapers & Graphic Communications Union Local No. 23 v. Newspapers, Inc.,* 586 F.2d 19 (7th Cir.1978); *NLRB v. Massachusetts Nurses Ass'n.,* 557 F.2d 894 (1st Cir. 1977).

The Second Circuit has adopted the position that interest arbitration clauses are enforceable only insofar as the disputed contract terms are mandatory subjects of bargaining. *NLRB v. Sheet Metal Workers Int'l. Assoc., Local Union No. 38,* 575 F.2d 394 (2d Cir.1978). *Sheet Metal* involved the same interest arbitration clause as in the present case. The union insisted to impasse on the inclusion in the new contract of two nonmandatory subjects, (1) a provision requiring the employer to contribute to certain industry promotion funds, and (2) an interest arbitration clause. The employer in *Sheet Metal* filed an unfair labor practice charge before the National Labor Relations Board. The Board found that the union violated § 8(b)(3) of the National Labor Relations Act, 29 U.S.C. § 158(b)(3), by its insistence on the two provisions. In the meantime, the union proceeded to arbitration before the National Joint Adjustment Board and was awarded a contract including the industry fund and interest arbitration provisions. The employer did not appear at the hearing before the Adjustment Board. The Second Circuit enforced the NLRB order directing the union to desist from the unfair labor practices. The court held that, as applied to nonmandatory subjects, an interest arbitration clause is contrary to national labor policy because it deprives the parties of their right to exclude nonmandatory subjects from bargaining. *Id.* at 399. The court also ruled that the employer was entitled to refuse to appear before or accept the decision of the National Joint Adjustment Board. *Id.*

We are persuaded by the reasoning in *Columbus Printing Pressmen* and *Sheet Metal.* We hold that an interest arbitration clause is unenforceable insofar as it applies to the inclusion of a similar clause in a new collective bargaining agreement. A decision by the Ninth Circuit to the contrary, *Sheet Metal Workers' Int'l Ass'n. Local 252 v. Standard Sheet Metal, Inc.,* 699 F.2d 481 (9th Cir.1983), does not deal with the reasoning in *Columbus Printing Pressmen* and *Sheet Metal,* and is not persuasive to us.

Local 14 also contends that Aldrich and Aero waived their right to question the enforceability of the arbitration award by failing to timely move to vacate the award. *See Sheet Metal Workers' Intn'l. Assoc. Local 252 v. Standard Sheet Metal, Inc.,* 699 F.2d 481 (9th Cir.1983). We need not address this issue since it was raised for the first time on appeal.

We also need not reach the district court's alternative ruling that the collective bargaining agreements had expired when Local 14 submitted the contract disputes to arbitration and that the duty to arbitrate expired along with the agreements.

The judgment of the district court is affirmed.